FILED

2009 Feb-23  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GARY DAVIS,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 4:07-CV-2303-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Gary Davis brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Income Benefits ("DIB"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.     Procedural History

Plaintiff filed his application for a period of disability and DIB on February 4, 2004. (Tr. 83). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 66-67, 78-79). Plaintiff's case was heard by ALJ Jerome L. Munford on February 6, 2006. (Tr. 29, 65, 71). In his October 30, 2006 decision, ALJ Munford determined that Plaintiff was not eligible for a period of disability or DIB because he failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform sedentary jobs. (Tr. 16-28).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on November 1, 2007.  (Tr. 3-5).  Within the required time limitations, Plaintiff filed his civil action in this court.

Plaintiff was born on August 4, 1962 and has a ninth grade education.  (Tr. 36-37, 83). Plaintiff has previous employment as a machine operator, shot blaster, landscaper, and mechanic. (Tr. 37-39, 94).  Plaintiff alleges that he has been unable to engage in substantial gainful activity since November 6, 2003.[1]  (Tr. 12).  He claims that he became unable to work because he has no cartilage in his right knee and had surgery on the right knee.  (Tr. 67).

On September 4, 2003, Plaintiff was diagnosed as having a complex tear of the right medial meniscus and chondral patellofemoral defects.  (Tr. 114).  Plaintiff underwent a partial medial meniscectomy and extensive chondroplasty of the right patella and right trochlear groove. (*Id*.).  Dr. Stephen P. Cowley examined Plaintiff on September 16, 2003, and found Plaintiff to have a "pretty" good effusion that day and limited flexion.  (Tr. 119).  Dr. Cowley prescribed 200 milligrams of Celebrex per day and some physical therapy.  (*Id*.).

Dr. Cowley examined Plaintiff again on September 30, 2003 and indicated that Plaintiff had a moderate effusion.  (Tr. 118).  Dr. Cowley noted that he removed approximately 60 cc of fluid from Plaintiff's knee, injected him, and, at his request, put him in a knee brace.  (*Id*.).  Dr. Cowley further indicated that Plaintiff could go back to work on October 6, 2003 with limited squatting and climbing for three to four weeks.  (*Id*.).  Plaintiff was given a hinged knee brace that he felt gave him enough support to allow him to return to work.  (*Id*.).

---

[1] By oral motion at the hearing before the ALJ, Plaintiff amended his alleged onset date of disability from September 5, 2003 to November 6, 2003.  (Tr. 35).

When Plaintiff returned to Dr. Cowley on October 28, 2003, Dr. Cowley indicated that Plaintiff had been experiencing a slight popping in his knee and wanted to come in and have it checked. (Tr. 117). Plaintiff had a 1 to 2+ effusion, but excellent range of motion. (*Id*.). An x-ray of Plaintiff's knee showed no bone or soft tissue abnormality. (*Id*.). Dr. Cowley indicated that he believed Plaintiff was just accommodating to the roughened articular surface and that he could continue working and taking Celebrex. (*Id*.).

Plaintiff testified that he injured his knee on the job on November 6, 2003. (Tr. 37). According to his testimony, he was running a machine and a piece of metal came out of the side, hitting him in the corner of the eye, which caused him to have knee damage, too. (*Id*.).

Plaintiff returned to Dr. Cowley on February 3, 2004. (Tr. 116). Plaintiff complained of pain in the knee, particularly when being on it for long periods of time. (*Id*.). On examination, Plaintiff did not have an effusion that day, although he complained of discomfort when he moved the knee back and forth. (*Id*.). However, Plaintiff had smooth motion and no evidence of crepitance. (*Id*.). Dr. Cowley also indicated that he did not see anything that should preclude Plaintiff from being able to go back to useful work. (*Id*.).

Dr. Carter E. Slappey examined Plaintiff's right knee on April 13, 2004, finding some patellofemoral crepitus and tenderness. (Tr. 126-27). Plaintiff had some tenderness over the medial joint line. (Tr. 126). He had good range of motion with no significant effusion. (*Id*.). His distal neurovascular status was intact. (*Id*.). Dr. Slappey reported that Plaintiff said he had fluid drawn off his knee several times following arthroscopic surgery, and that the fluid and swelling had settled down a little bit. (*Id*.). Dr. Slappey diagnosed Plaintiff with post traumatic arthritis and

chondromalacia of the right knee. (*Id*.). Plaintiff was prescribed 20 milligrams of Feldene daily and also prescribed a physical therapy exercise program. (*Id*.).

Dr. Slappey reviewed Plaintiff's arthroscopic films on April 28, 2004, after which he wrote that Plaintiff had some moderately severe chondromalacia and bilateral meniscal tears. (*Id*.). He stated Plaintiff was improving with the Feldene and would continue with it, along with his weight reduction and exercise program. (*Id*.).

On May 18, 2004, Dr. Slappey again examined Plaintiff, noting that Plaintiff had slipped that day and injured his right knee. (Tr. 125). Plaintiff reported that he felt something pop, had a little pain, and some mild swelling. (*Id*.). However, there was no obvious instability and Plaintiff had fairly good range of motion. (*Id*.). Distal neurovascular status was intact and x-rays of the right knee revealed some mild arthritic changes, but nothing acute. (*Id*.). Dr. Slappey's impressions were that Plaintiff had a strain and arthritis of the right knee. (*Id*.). He noted that Plaintiff had a knee brace and prescribed Lortab 5 as needed for pain and 500 milligrams of Naprosyn twice daily with meals. (*Id*.).

On June 15, 2004, Plaintiff underwent diagnostic and operative arthroscopy of his right knee, partial medial meniscectomy, and chondroplasty medial femoral condyle, medial tibial plateau and patellofemoral joint for some Grade 2 chondromalacia. (Tr. 124).

Dr. Morton S. Rickless performed a consultative musculoskeletal examination of Plaintiff on August 11, 2005, and diagnosed him as being morbidly obese, with a height of 70.75 inches and a weight of 294 pounds. (Tr. 128). Dr. Rickless also diagnosed Plaintiff with hypertension; depression; chronic right knee pain, secondary to arthritis; and status post arthroscopic surgery three times. (Tr. 129). On examination, there were no limitations of range of motion of his back on

flexion, extension, or lateral bending, although Plaintiff did have some back pain, probably due to an abnormal gait pattern. (Tr. 128). There was no limitations of range of motion of the left lower extremity or right hip. (*Id.*). Plaintiff's right knee had 0 to 110 flexion. (*Id.*). The right knee was stable and had no fluid in it. (*Id.*). There was patella femoral crepitation bilaterally on the right more so than the left. (*Id.*). Muscle testing for quadriceps, tibialis anterior and posterior, peroneal longus, brevis and extensor halluces longus was 5/5 on the left and right except the right quadriceps was 4/5. (*Id.*). There were no deformities or deficits, and straight leg raising was negative in the seated and supine positions. (*Id.*). Dr. Rickless opined that Plaintiff would have limitations on sitting and standing for long periods of time, and should be able to change his position as needed. (Tr. 129). He indicated Plaintiff would not be able to squat, but could ambulate. (*Id.*). He stated that Plaintiff's lifting would probably be limited to light to moderate weights. (*Id.*).

Dr. Rickless also completed a medical source opinion form, on which he wrote that Plaintiff, in an eight-hour workday, can sit for four hours at a time, stand for one hour at a time, and walk for one hour at a time. (Tr. 130). He also wrote that Plaintiff, in an eight-hour workday, can constantly lift and carry ten pounds, frequently lift and carry twenty pounds, occasionally lift and carry thirty pounds, and never lift or carry more than fifty pounds due to arthritis in his right knee. (*Id.*). The source opinion form also indicates that Plaintiff can constantly push and pull with both arms and his left leg; occasionally push and pull with his right leg; but never climb, stoop, kneel, crouch, or crawl. (Tr. 131). Dr. Rickless reported that Plaintiff could occasionally balance and constantly handle, finger, feel, talk, hear, or reach overhead. (*Id.*). He wrote that Plaintiff can never work at unprotected heights and can occasionally be exposed to extreme cold or moving mechanical parts. (Tr. 132). He reported Plaintiff could frequently be exposed to extreme heat, wetness/humidity, and

vibration and drive automatic equipment. (*Id*.). Plaintiff could constantly be exposed to dust, fumes, or gases. (*Id*.).

Dr. Edward U. Kissel, III examined Plaintiff on November 4, 2005 and diagnosed him as having degenerative joint disease of the right knee. (Tr. 172). Dr. Kissel gave Plaintiff a note for sit down work only on his job and opined that Plaintiff definitely needed to do only sit down work indefinitely. (*Id*.). He also noted that Plaintiff knew that he needed to a have a total right knee arthroplasty. (*Id*.).

Plaintiff had a total right knee implant arthroplasty two weeks before a follow-up exam performed by Dr. Kissel on December 7, 2005. (Tr. 171). Plain films showed the total right knee implant arthroplasty in good position without evidence or signs of loosening or other acute abnormalities. (*Id*.).

On January 18, 2006, Dr. Kissel examined Plaintiff again and noted that the range of motion of Plaintiff's right knee continued to be excellent, but that Plaintiff's right knee had an effusion on it. (Tr. 169). Dr. Kissel reported that Plaintiff's right calf was non-tender itself and that Plaintiff's incision was well-healed with no signs or symptoms of infection. (*Id*.). He indicated that Plaintiff would be allowed to work, but only at a sit down duty. (*Id*.).

Dr. Kissel examined Plaintiff again on February 3, 2006 and found that Plaintiff continued to have an effusion on his right knee. (Tr. 174). Dr. Kissel wrote that Plaintiff was neurovascularly intact and that his incision itself looked good. (*Id*.). No signs or symptoms of infection were observed and plain films revealed the prosthesis to be in excellent position without evidence of loosening or other acute abnormalities. (*Id*.). Dr. Kissel also noted that he was going to have Plaintiff remain out of work, as work exacerbated his symptoms rather significantly. (*Id*.). Dr.

Kissel also had an extended discussion with Plaintiff regarding filing for disability, secondary to the inability of his job to accommodate him. (*Id*.).

## II.   ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since November 6, 2003 – his amended alleged onset date of disability. (Tr. 27). The ALJ determined that Plaintiff has the severe impairment of degenerative joint disease of the right knee; however, he also concluded that Plaintiff's impairment does not meet or equal any impairment listed in Appendix 1 to Subpart P, 20 CFR, Part 404. (*Id*.). According to the ALJ, Plaintiff's subjective complaints concerning his impairments and their intensity, persistence, and limiting effects were not fully credible due to their inconsistency with objective clinical evidence and the opinions of Plaintiff's treating physicians. (Tr. 25-26). The ALJ determined that Plaintiff retains the RFC to perform sedentary jobs which allow a sit/stand option (Tr. 27), but found that Plaintiff could not perform his past relevant work. (*Id*.).

At the hearing, the ALJ called a vocational expert ("VE") familiar with Plaintiff's background to testify. (Tr. 53-63). The VE testified that an individual with Plaintiff's limitations could perform jobs which exist in significant numbers in the regional and national economies. (Tr. 60-61). Based on the VE's testimony, the ALJ found that a significant number of jobs exist in the national economy that Plaintiff is capable of performing and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 26).

## III.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed and remanded for further consideration. (Doc. #10 at 9). Plaintiff asserts there is one reason why this court should grant the relief sought: the ALJ improperly evaluated the credibility of Plaintiff's complaints of pain.

**IV.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.      **Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's argument for

reversal and remand.   For the reasons outlined below, the court finds that the ALJ relied on

substantial evidence and applied the proper legal standards.

A.      **The ALJ Properly Weighed Plaintiff's Subjective Complaints of Pain**

Plaintiff's argument is that the ALJ did not give his subjective complaints of pain sufficient

weight. Specifically, Plaintiff urges that the ALJ's decision is not supported by substantial evidence

because the ALJ did not properly apply the Eleventh Circuit Pain Standard.

The law that governs subjective complaints of pain is well-settled:

> In order to establish a disability based on testimony of pain and other symptoms, the
> claimant must satisfy two parts of a three-part test showing: (1) evidence of an
> underlying medical condition; and (2) either (a) objective medical evidence
> confirming the severity of the alleged pain; or (b) that the objectively determined
> medical condition can reasonably be expected to give rise to the claimed pain. *See
> Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits
> subjective testimony, he must articulate explicit and adequate reasons for doing so.
> Failure to articulate the reasons for discrediting subjective testimony requires, as a
> matter of law, that the testimony be accepted as true.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (some citations omitted).

Plaintiff complained of disabling right knee pain.  (Tr. 37, 39-40, 87).  At the hearing,

Plaintiff reported that his pain levels were 7-8 on a scale of 1-10.  (Tr. 41).  However, the ALJ found

Plaintiff's complaints of disabling pain were not credible.  The ALJ noted that Dr. Kissel, Plaintiff's

treating physician, repeatedly indicated that Plaintiff is capable of working at "sit down" type jobs

despite his right knee condition, though Plaintiff was unable to return to his previous job, which

could not accommodate him.[2]  The ALJ also observed that Plaintiff's other examining practitioners have indicated that Plaintiff's right knee impairment does not completely disable him.

Considering the ALJ's findings in light of the applicable standard of review, the court finds no error.  The ALJ properly considered Plaintiff's history of knee pain and the treatment he received. He weighed Plaintiff's subjective complaints and concluded that, while the medical evidence supported a finding of some pain and restrictions, the evidence did not show that Plaintiff was disabled because of his pain.  In discounting Plaintiff's subjective testimony, the ALJ relied upon substantial evidence and properly applied the law of this Circuit as articulated in *Wilson*. Accordingly, Plaintiff's argument fails.

## VI.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ___23rd___ day of February, 2009.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2]Plaintiff argues that the ALJ did not give sufficient weight to Dr. Kissel's opinion.  Dr. Kissel recommended that Plaintiff pursue disability benefits because he could no longer perform his job as a shot blaster and his employer was unable to accommodate him.  However, in Dr. Kissel's opinion, Plaintiff retained the ability to do "sit down" work.  Thus, the ALJ found that Dr. Kissel's opinion did not limit Plaintiff from other work.  The ALJ then found that Dr. Kissel's assessment left Plaintiff with the ability to perform other jobs that existed in significant numbers in the national economy.  *See Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986).  The ALJ properly performed his duty of assessing Plaintiff's RFC and substantial evidence supports this RFC finding and the ALJ's consideration of Dr. Kissel's opinion.

11